# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARGARET LINEHAN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GOLDEN NUGGET, GOLDEN NUGGET ) | |
| EXPERIENCE, LLC, MIRAGE RESORTS, ) | |
| INCORPORATED d/b/a THE GOLDEN ) | CASE NO. 05 C 7030 |
| NUGGET, MGM MIRAGE d/b/a THE ) | |
| GOLDEN NUGGET, LANDRY'S ) | Judge Robert M. Dow, Jr. |
| RESTAURANTS, INC. d/b/a THE GOLDEN ) | |
| NUGGET; POSTER FINANCIAL GROUP ) | |
| d/b/a GNLV, CORP; and GNLV, CORP. d/b/a ) | |
| GOLDEN NUGGET, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motion to dismiss Plaintiff's claim for lack of personal jurisdiction and improper venue [34] pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). Having carefully reviewed the briefs [36, 37] and the case law cited by the parties, the Court grants the motion and dismisses this case for lack of personal jurisdiction.

**I. Background**

Plaintiff, Margaret Linehan ("Linehan" or "Plaintiff"), a resident and citizen of Chicago, Illinois, filed this diversity action on December 14, 2005 against Defendants Golden Nugget, Golden Nugget Experience, LLC, Mirage Resorts, Incorporated d/b/a The Golden Nugget, MGM Mirage d/b/a The Golden Nugget, Landry's Restaurant Inc. d/b/a The Golden Nugget, Poster Financial Group d/b/a GNLV, Corp., and GNLV, Inc. d/b/a Golden Nugget. After several

amendments, Plaintiff filed the operative complaint in this matter on February 21, 2006. See [12-2, 15]. Linehan seeks to recover for personal injuries that she allegedly sustained on or about February 25, 2004, when she slipped and fell at the Golden Nugget hotel in Las Vegas, Nevada. [12-2], Second Am. Compl. ¶ 9.

At the time of Plaintiff's alleged slip and fall, GNLV, Corp. owned and operated the Golden Nugget. See Beckett Aff., Ex B to Def. Mem. ¶ 14. Golden Nugget, Inc., formerly known as Poster Financial Group, Inc., owns all of the outstanding issued shares of GNLV, Corp. and does not now own, nor has it ever owned, real estate or property in the state of Illinois, nor has it had employees or agents or transacted business in Illinois. *Id.* ¶¶ 9-11. On September 27, 2005, Golden Nugget, Inc. was acquired by Landry's Gaming, Inc., a separate entity incorporated in Nevada. *Id.* ¶ 18. Like Golden Nugget, Inc., Landry's Gaming Inc. does not now own, nor has it ever owned, real estate or property in Illinois, nor has it had employees or agents, or transacted business in Illinois. Scheinthal Aff., Ex. C to Def. Mem. ¶ 5.

Plaintiff alleges that Defendants reached out to citizens of Illinois through their advertising, promotions and other materials regarding their hotels and casinos in Las Vegas, Nevada, including over the Internet. Second Am. Compl. ¶ 7. Plaintiff elaborates this point in her opposition brief, specifically asserting that Defendants' contacts with Illinois are evidenced principally by their interactive website that can be used by Illinois residents. Plaintiff also alleges that Defendants have promoted the Golden Nugget through other business activities in Illinois, including (i) Defendant Landry's Restaurants, Inc.'s ownership of Joe's Crab Shacks and Rainforest Café restaurants in Illinois, (ii) the "increase" in number of corporate/tour groups that visited The Golden Nugget hotel in Las Vegas including Illinois companies from the Chicagoland area, and (iii) the Golden Nugget's Independent Agent Marketing Agreements with

individuals located in Illinois. See Pl. Resp. at 3-4. Plaintiff contends that "the purpose" of Defendants' promotion and solicitation activities is "to bring Illinois residents to the Golden Nugget's Hotel and Casino." Pl. Resp. at 7.

Various agents of Defendants confirmed that the Golden Nugget hotel maintains an interactive website through which prospective customers may make reservations for the hotel and for the hotel's spa and restaurant services. Bonnell Dep. at 10, 19, Ex A to Pl. Resp.; Chasey Dep. at 11, 23-25, 30; Ex. C to Pl. Resp.; Beckett Dep. at 11, Ex. G to Pl. Resp. Nonetheless Defendants counter that none of their activities, including the operation of the Golden Nugget's interactive website, are sufficient to create personal jurisdiction in Illinois. Defs. Reply at 2.

## II. Analysis

### A. Legal Standard on Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue

Rule 12(b)(2) states that an action against a party over whom the Court lacks personal jurisdiction must be dismissed. Fed. R. Civ. P. 12(b)(2). Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. See *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). When determining whether Plaintiff has met her burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by Defendants' affidavits or exhibits. See *Purdue Research Foundation v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). In addition, any conflicts in the affidavits regarding relevant facts must be resolved in Plaintiff's favor. See *Purdue*, 338 F.3d at 782 (citations omitted). However, the Seventh Circuit has cautioned that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction."

*Id*. at 783.

Rule 12(b)(3) provides that a party may move to dismiss an action when that action has not been filed in a proper venue. Fed. R. Civ. P. 12(b)(3). Venue is properly established in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391. When a federal lawsuit is filed in an improper venue, the Court may "[f]or the convenience of parties and witnesses in the interest of justice * * * transfer any civil action to any other district or division where it might have been brought." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (quoting 28 U.S.C. § 1404(a)).

### B.  Personal Jurisdiction

1.  In diversity actions, a federal court has personal jurisdiction over a non-resident defendant only if a court of the state in which the federal court sits would have personal jurisdiction. See *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). Generally, courts examine three "distinct obstacles to personal jurisdiction:" (1) state statutory law, (2) state constitutional law, and (3) federal constitutional law. See *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).

Under Illinois statutory law, a court may exercise personal jurisdiction over a non-resident through operation of the Illinois long-arm statute. See 735 ILCS § 5/2-209. That statute extends personal jurisdiction over claims that arise out of a number of enumerated actions and activities, including transacting any business in Illinois. See 735 ILCS § 5/2-209(a)(1). In addition, personal jurisdiction is proper against any corporation doing business within Illinois. 735 ILCS § 5/2-209(b). Finally, the long-arm statute's catch-all provision authorizes courts to

exercise jurisdiction on any basis permitted by the Illinois or federal Constitutions. 735 ILCS § 5/2-209(c).

Because the Illinois long-arm statute authorizes personal jurisdiction to the fullest constitutional limits, the three inquiries above "collapse into two constitutional inquiries — one state and one federal." *RAR*, 107 F.3d at 1276. Moreover, the Seventh Circuit has opined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction" (*Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2003)), despite a cautionary pronouncement in a 1990 Illinois Supreme Court decision suggesting that the state and federal standards may not be co-extensive. See *Rollins v. Elwood*, 141 Ill. 2d 244, 274-275 (1990); see also *Hyatt Int'l*, 302 F.3d at 715 (acknowledging *Rollins*, but noting that even if hypothetically the Illinois state and federal due process standards might diverge, no basis for such a divergence existed in the case before it).

In light of the Seventh Circuit's assessment in *Hyatt* and the absence of post-*Rollins* guidance from the Illinois courts as to how Illinois and federal law may differ as a practical matter in regard to personal jurisdiction, a single due process inquiry will suffice. See *Hyatt*, 302 F.3d at 715; *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 919 (N.D. Ill. 2008); *Kostal v. Pinkus Dermatopathology Lab., P.C.*, 357 Ill. App. 3d 381, 388 (1st Dist. 2005) (noting that the court had not located any post-*Rollins* cases finding that federal due process requirements had been met where Illinois due process requirements were not). The federal test for personal jurisdiction under the Due Process Clause of Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1940) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful availment" requirement of the minimum contacts standard ensures that a non-resident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

In addition, the Supreme Court has distinguished two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414-416 (1984); see also *Hyatt*, 302 F.3d at 713. General jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state. *Heliocopteros*, 466 U.S. at 416; *Hyatt*, 302 F.3d at 713. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt*, 302 F.2d at 713. On the other hand, specific jurisdiction is more limited and a plaintiff in such circumstances must show that the alleged controversy between the parties "arise[s] out of" or "relate[s] to" the defendant's forum contacts in addition to establishing that minimum contacts exist. *Id.*

Finally, even if a court finds that the minimum contacts standard and the specific jurisdiction requirement have been met, a court's due process inquiry does not end. The court must also consider whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). "Thus, courts in 'appropriate cases' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the interstate judicial system's interest in obtaining

convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). These considerations are sometimes used to establish the reasonableness of jurisdiction in lieu of a strong showing of minimum contacts. *Burger King*, 471 U.S. at 477 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

2. Here, Plaintiff does not contend that Defendants have "continuous and systematic" contacts with Illinois, nor do the relevant facts appear to support such a contention. See *Hyatt*, 302 F.3d at 713 (explaining that where a defendant's contacts with the forum state are more limited, the plaintiff's only option is to establish specific jurisdiction). Instead, in her brief in opposition to Defendants' motion, Plaintiff attempts to establish the existence of specific jurisdiction on the basis of Defendants' contacts in Illinois – and, in particular, Defendants' "promotion and solicitation activities in Illinois [] to bring Illinois residents to the Golden Nugget's Hotel and Casino" in Las Vegas, principally through its interactive website.[1] Pl. Resp. at 3, 7.

---

[1] Although Plaintiff's brief focuses on Defendants' website, her operative complaint sets forth several additional examples of Defendants' promotional activities. For example, she points to (i) Defendant Landry's Restaurants, Inc.'s ownership of Joe's Crab Shacks and Rainforest Café restaurants in Illinois, (ii) the "increase" in number of corporate/tour groups that visited the Golden Nugget Hotel in Las Vegas including Illinois companies from the Chicagoland area, and (iii) the Golden Nugget's Independent Agent Marketing Agreements with individuals located in Illinois. However, Plaintiff offers no argument as to how any of those activities satisfy her burden with respect to either the minimum contacts analysis or the specific jurisdiction requirement that Plaintiff's alleged controversy "arises out of" or "relates to" such contacts. Instead, Plaintiff's argument focuses on the interactivity of the website. In any event, the Court cannot find any rationale under which the non-Internet related promotional activities listed above support Plaintiff's contention that personal jurisdiction exists here, especially given that Plaintiff has not alleged in her Second Amended Complaint or contended in her brief that she was induced by, or even knew of, any of these activities prior to her alleged slip and fall at the Golden Nugget.

7

In her complaint, Plaintiff alleged that Defendants "reached out" to Illinois residents "through advertising, promotional and other materials." Second Am. Compl. ¶ 7. Defendants do not deny that they advertise, including through the Internet. However, Defendants attest through affidavits that they do not specifically target Illinois with their advertising, nor do they own any real estate, have offices, or employ agents in Illinois. Beckett Aff. at ¶ 5; Scheinhal Aff. at ¶ 5. Nothing in Plaintiffs' operative complaint or in its submissions before the Court suggests otherwise. According to Defendants, the Golden Nugget has a website, with its servers based in Las Vegas, Nevada, that allows any person with an internet connection to access information regarding the Golden Nugget and its player's club, the 24 Karat Club, via its website. Visitors must actively sign up for the 24 Karat Club, either through the website or by visiting the hotel in Las Vegas, Nevada, and are sent information about upcoming events and programs only after they sign up. Provence Dep., Ex. E to Defs.' Reply, at 7-8. The website is accessible nationwide and does not specifically target Illinois residents.

The plethora of pertinent state and federal decisions in recent years confirms the accuracy of the Illinois Appellate Court's recent observation that "the type of Internet activity that is necessary to establish minimum contacts is an emerging area of jurisprudence." *Howard v. Missouri Bone and Joint Center, Inc.*, 373 Ill. App. 3d 738, 743 (5th Dist. 2007); see also *Bombliss v. Cornelsen*, 355 Ill. App. 3d 1107, 1114 (3d Dist. 2005) (same). Many of those decisions have focused on the extent to which the website in question is passive (*i.e.*, the website merely makes available information about the company and its products) or interactive (*i.e.*, the website permits customers to order goods and services). Drawing on that line of cases, Plaintiff asserts that "[t]he question to be addressed" in resolving Defendants' motion "is whether the

internet site is interactive," and if it is, then Plaintiff urges that "personal jurisdiction is proper." Pl. Resp. at 5.

While Plaintiff's argument is not entirely without support in the case law, in view of the continuing evolution of both the law and the technology in this area, the Court is inclined to look first to more recent relevant decisions. Of those, the Illinois Appellate Court's decision last year in *Howard* stands out as particularly comprehensive and well-reasoned. In *Howard*, the court noted that "Illinois courts have long held that a mere advertisement or solicitation is not enough to sustain personal jurisdiction in Illinois." *Id*. at 743. The court discussed the various schools of thought referenced above on the subject of asserting personal jurisdiction on the basis of the defendant's Internet activity, including the "sliding scale" approach adopted by some courts, including other districts of the Illinois Appellate Court. *Id*. at 742-43; see also *Larochelle v. Allamian*, 361 Ill. App. 3d 217, 225 (2nd Dist. 2005); *Bombliss v. Cornelsen*, 355 Ill. App. 3d 1107, 1114 (3rd Dist. 2005); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 837 (N.D. Ill. 2000). But at the end of the day, the court in *Howard* concluded that "the web page's level of interactivity is irrelevant" to the personal jurisdiction inquiry. 373 Ill. App. 3d at 743.

As the court persuasively reasoned, "an interactive website is similar to telephone or mail communication," while "[a] passive website is much the same as advertising on the radio or in a magazine." *Howard*, 373 Ill. App. 3d at 743. In either case, "[a]n ad on the Internet is no different than an ad in any other medium that provides a telephone number or any other means to connect a potential defendant. It is mere advertisement or solicitation of a business." *Id.* Like every other form of advertising, Internet notices and solicitations endeavor to connect producers of goods and services to their customers. Many of these sites allow consumers from all over the

9

country to transact business online. The Internet may be more instantaneous and more ubiquitous – and more efficient in some, though not all, circumstances – but it differs from other more traditional means of facilitating commerce only in degree, not in kind. If the sliding scale test were to be applied, many of these businesses would be susceptible to personal jurisdiction in courts in every state across the country, even though their websites do not target a specific forum. For all of these reasons, this Court agrees with the Illinois Appellate Court's conclusion that "[t]he Internet does not pose unique jurisdictional challenges. People have been inflicting injury on each other from afar for a long time. Although the Internet may have increased the quantity of these occurrences, it has not created problems that are qualitatively more difficult." *Id.* at 743-44 (quoting A. Stein, *Personal Jurisdiction and the Internet: Seeing Due Process Through the Lens of Regulatory Precision*, 98 Nw. U. L. Rev. 411, 411 (2004)).

Indeed, the result and rationale in *Howard* can be seen simply as a reaffirmation of the well established rule that "mere advertisement or solicitation of business is not enough to sustain personal jurisdiction in Illinois." *Crum & Forster Specialty Ins. Co. v. Extended Stay America, Inc.*, 375 Ill. App. 3d 654, 662 (1st Dist. 2007) (holding that "participation in national marketing and reservation systems was insufficient for the trial court to exercise personal jurisdiction"); see also *Breschia v. Paradise Vacation Club, Inc.*, 2003 WL 22872128, at *3 (N.D. Ill. Dec. 4, 2003) (dismissing for lack of personal jurisdiction notwithstanding defendant's "website that allows customers to make and pay for reservations over the Internet for lodging in foreign states"); *IDS Life Ins. Co. v. SunAmerica, Inc.*, 958 F. Supp. 1258, 1268 (N.D. Ill. 1997) (holding that national advertising generally is insufficient to establish jurisdiction). That view also is consistent with the Seventh Circuit's reading of Supreme Court precedent, which "has stressed that, although technological advances may alter the analysis of personal jurisdiction, those advances may not

eviscerate the constitutional limits on a state's power to exercise jurisdiction over nonresident defendants." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004).

As demonstrated above, the undisputed facts establish that Defendants' operation of an interactive website is not an adequate basis for the exercise of specific jurisdiction under the "minimum contacts" analysis. That alone is dispositive and requires dismissal of this case. But even if that conclusion were legally incorrect, Plaintiff's complaint still would be subject to dismissal because Plaintiff cannot establish that the underlying factual allegations in this suit "arise out of" Defendants' alleged requisite "minimum contacts" with Illinois, as they must to establish specific jurisdiction under Seventh Circuit law. See *Hyatt*, 302 F.3d at 713; see also *Tamburo v. Dworkin*, 2007 WL 3046216, at *4 (N.D. Ill. Oct. 9, 2007) (citation omitted) (to establish specific jurisdiction there must be a "causal nexus" between the transactions alleged in support of jurisdiction and the cause of action). Plaintiff has failed to plead any relation between her alleged trip and fall injury in Las Vegas, Nevada, and Defendants' activity in Illinois. Plaintiff has not alleged that her claim is in any way related to Defendants' website, the 24 Karat Club, or any other national advertising or promotional activities of Defendants (see also n.1, *supra*). In fact, there is no allegation that Plaintiff even had any knowledge of any of these activities prior to her alleged trip and fall, much less that Defendants' promotional activities over the Internet or otherwise induced Plaintiff to patronize the Golden Nugget. Indeed, even if the sliding scale test had been applied, Plaintiff's claim would fail to establish jurisdiction over Defendants. Regardless of the level of interactivity of Defendants' website, Plaintiff did not plead that she visited, used, or was aware of the existence of the website or was contacted by Defendants in any other way prior to her alleged trip and fall.

Finally, even if Plaintiff were able to establish minimum contacts and show that the alleged incident arose out of or related to those contacts, Plaintiff offers no reason why an exercise of personal jurisdiction by this Court would comport with "fair play and substantial justice." See *Int'l Shoe*, 326 U.S. at 320; *Burger King,* 471 U.S. at 477. The alleged incident occurred in Las Vegas, Nevada, where Defendants are incorporated and Plaintiff initially sought medical treatment. In addition, employees and agents of the Defendants who would have knowledge or information regarding the alleged incident are in Las Vegas. All possible witnesses are located in Las Vegas, Nevada, except for Plaintiff, her daughter, and one other individual located in Tennessee. And, lastly, the claim bears no relation to Defendant's local activities, because Plaintiff has not plead that any minimal contacts that Defendants had with Illinois through their Internet advertising in any way induced her visit to the premises on which the injury took place. For all of these reasons, Plaintiff cannot establish that the assertion of personal jurisdiction over Defendants would be fair and reasonable.

In sum, the Court concludes that Defendants have not purposely availed themselves of the benefits and protections of the laws of Illinois by directing their business activities at residents within the state and thus Plaintiff cannot satisfy the minimum contacts standard. In addition, even if there were sufficient minimum contacts, Plaintiff does not allege that her claim arises out of, or is related to, any activities by Defendants that were directed at Plaintiff in Illinois. Finally, it would not be fair or reasonable to require Defendants to defend this claim in Illinois given that Plaintiff has not even suggested a nexus between her claim and any activity of Defendants in the forum. Accordingly, Plaintiff has failed to establish that personal jurisdiction over Defendants exists, and her lawsuit must be dismissed.

## C. Venue

Even if Plaintiff had established that personal jurisdiction existed over Defendants, venue is improper and Plaintiff's claim would be dismissed under Rule 12(b)(3). Fed. R. Civ. P. 12(b)(3). No allegations in Plaintiff's Second Amended Complaint establish that venue is proper in the Northern District Court of Illinois under the three avenues established by 28 U.S.C. § 1391. All Defendants are Nevada corporations and are not residents of Illinois. See 28 U.S.C. § 1391(a)(1). The Golden Nugget, the property on which the alleged trip and fall occurred, is located in Las Vegas, Nevada. See 28 U.S.C. § 1391(a)(2). Finally, no Defendants are subject to personal jurisdiction in Illinois. See 28 U.S.C. § 1391(a)(3). Therefore, venue is improper pursuant to 28 U.S.C. § 1391. In light of the fact that venue is improper in the Northern District of Illinois, the Court does not have authority to transfer this case to a different venue. 28 U.S.C. § 1404(a).

## III. Conclusion

Plaintiff has failed to establish that this Court has personal jurisdiction over Defendants. In addition, venue is improper. Therefore, Defendants' Motion to Dismiss [34] is granted and this case is dismissed.

Dated: September 5, 2008

_____
Robert M. Dow, Jr.
United States District Judge